UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PENN-AMERICA INSURANCE COMPANY,<br>Plaintiff,<br><br>vs.<br><br>REBOUNDERZ FRANCHISE & DEVELOPMENT INC., YEGLINSKI ENTERPRISES, INC. d/b/a REBOUNDERZ OF EDISON, EMIL VOGT, and MICHELLE VOGT,<br><br>Defendants. | CIVIL ACTION NO. _____<br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Penn-America Insurance Company, headquartered at 3 Bala Plaza East, Suite 300, Bala Cynwyd, PA 19004 ("Penn-America"), by and through its attorneys, Riker, Danzig, Scherer, Hyland & Perretti, LLP, located at One Speedwell Avenue, Morristown, New Jersey 07962 by way of Complaint for Declaratory Judgment against Defendants Rebounderz Franchise & Development Inc., headquartered at 2547 Old Lake Mary Road, Sanford, Florida 32773 ("Rebounderz"), Yeglinski Enterprises, Inc. d/b/a Rebounderz of Edison, headquartered at 164-D Cross Slope Court, Manalapan, New Jersey 07726 ("Yeglinski"), and Emil Vogt and Michelle Vogt, (the "Vogts") residing at 100 Wilton Avenue, Middlesex, New Jersey 08846 (collectively "Defendants"), hereby alleges as follows:

## NATURE OF ACTION

1.    Penn-America seeks a declaration, pursuant to 28 U.S.C. § 2201(a), that it does not owe any obligation to defend or indemnify Rebounderz under the terms of a commercial liability policy issued to Rebounderz, in connection with an underlying action filed in the Superior Court of New Jersey, Law Division, Middlesex County, under docket no. MID-L-6578-16 (the "Underlying Action"). See Complaint attached as Exhibit A.

**THE PARTIES**

2.      Plaintiff Penn-America is, and at all relevant times was, a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business in Bala Cynwyd, Pennsylvania.

3.      Upon information and belief, defendant Rebounderz is a corporation organized under the laws of Florida, having its principal place of business in Lake Mary, Florida.

4.      Upon information and belief, defendant Yeglinski is a corporation organized under the laws of New Jersey, having its principal place of business in Edison, New Jersey. Yeglinski is named as an interested party to this declaratory judgment action, pursuant to 28 U.S.C. § 2201.

5.      Upon information and belief, defendants the Vogts are individuals residing in New Jersey, who are the plaintiffs in the Underlying Action.  The Vogts are named as interested parties to this declaratory judgment action, pursuant to 28 U.S.C. § 2201.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs.

7.      Venue is proper in the United States District Court for New Jersey by virtue of 28 U.S.C. § 1391(b)(1) and (2) because Yeglinski and the Vogts reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**THE PENN-AMERICA POLICY IN DISPUTE**

8.      Penn-America issued general liability policy no. PAC7053629 to Rebounderz for a policy period from March 12, 2014 to March 12, 2015, with applicable limits

of liability of \$1,000,000 per occurrence, \$2,000,000 in the aggregate (the "Policy").  See

Exhibit B.

      9.      The Policy includes conditions which state, in relevant part:

**2.      Duties in the Event of an Occurrence, Offense, Claim or Suit**

**a.**      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

      **(1)**      How, when and where the "occurrence" or offense took place;

      **(2)**      The names and addresses of any injured persons and any witnesses; and

      **(3)**      The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**      If a claim is made or "suit" is brought against any insured, you must:

      **(1)**      Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)**      Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit as soon as practicable."

**c.**      You and any other involved "insured" must:

      **(1)**      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit."

      10.      The Policy was issued pursuant to Florida Surplus Lines Law through a

Florida Surplus Lines agent located in Fort Lauderdale, Florida, and delivered to Rebounderz'

principal place of business in Sanford, Florida.

## **BACKGROUND**

**A.**      **The Franchise Agreement, Vogt's Accident and the Underlying Action**

11.     On or about December 31, 2011, Rebounderz entered into a Franchise Agreement with Yeglinski for the establishment of a Rebounderz franchise facility at 76 Carter Drive, Edison, New Jersey (the "Property").

12.     On December 14, 2014, Mr. Vogt allegedly sustained injuries while participating in a recreational trampoline activity at the Property (the "Accident").

13.     On or about November 14, 2016, the Vogts filed the complaint in the Underlying Action, naming as defendants "Rebounderz of Edison, Rebounderz Edison, Rebounderz Edison, NJ, Rebounderz Franchise and Development, Inc., [and] Yeglinski Enterprises, Inc.," and seeking to recover damages for the Accident.  See Exhibit A.

**B.     Late Notice of the Accident and Underlying Action to Penn-America**

14.     Rebounderz first learned of the Accident when it occurred in December of 2014.  See email correspondence between Dexter Ryan of Rebounderz and Cheryl Mawby of Penn-America attached hereto as Exhibit C.

15.     Rebounderz did not report the Accident to Penn-America in December 2014.

16.     Rebounderz first learned of the Underlying Action no later than May of 2017 when a representative for Yeglinski contacted Rebounderz to obtain information to respond to interrogatories propounded in the Underlying Action.  See Exhibit C.

17.     Rebounderz did not report the Accident or the Underlying Action to Penn-America until December 6, 2017.

18.     Penn-America has agreed to defend Rebounderz in the Underlying Action under a reservation of rights dated January 23, 2018, which Rebounderz consented to.  See Exhibit D.

## COUNT ONE – DECLARATORY JUDGMENT

19.     Penn-America repeats and realleges paragraphs 1 through 18, as if fully set forth herein.

20.     Florida law governs the enforcement and interpretation of the Policy.

21.     There is no coverage under the Policy for the claims asserted in the Underlying Action because Rebounderz breached the notice and cooperation provisions of the Policy by failing to provide "prompt" notice of the Accident and Underlying Action.

22.     As a result of Rebounderz' breach of the notice and cooperation provisions of the Policy and the three year delay in providing notice, prejudice to Penn-America is presumed under applicable Florida law.

23.     Additionally, Penn-America has suffered prejudice as a result of Rebounderz' breach of the notice and cooperation provisions of the Policy.

24.     Penn-America therefore has no duty to defend or indemnify Rebounderz for the Underlying Action, and may terminate its defense of Rebounderz in the Underlying Action.

**WHEREFORE**, Penn-America demands that the Court adjudge and declare that:

A. Penn-America has no duty to defend or indemnify Rebounderz for any settlement, judgment or payment rendered against or required by Rebounderz in the Underlying Action;

B. Penn-America has no other defense or indemnification obligation under the Policy with regard to the Underlying Action;

C. Penn-America may terminate the defense provided to Rebounderz for the Underlying Action;

D. Penn-America is entitled to reasonable counsel fees and costs of suit incurred in bringing this action; and

**E.** Penn-America is entitled to any further relief which the Court deems to be just and equitable.

**RIKER, DANZIG, SCHERER,**
**HYLAND & PERRETTI LLP**
Attorneys for Plaintiff,
Penn-America Insurance Company

Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, NJ 07962-1981
(t)(973) 538-0800
(f)(973) 538-1984
lkalik@riker.com

By: /s Lance J. Kalik
       Lance J. Kalik (LK-4677)

Dated:   May 1, 2018

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, the undersigned attorney for Plaintiff, certifies that, to the best of his knowledge, the matter in controversy herein is not the subject of another action pending in any United States court or in any arbitration or administrative proceeding, except the underlying action filed in the Superior Court of New Jersey, Law Division, Middlesex County, docket no.: MID-L-6578-16.

.

<div style="margin-left: 40%;">

**RIKER, DANZIG, SCHERER,**
**HYLAND & PERRETTI LLP**
Attorneys for Plaintiff,
Penn-America Insurance Company


By:_/s Lance J. Kalik_____
Lance J. Kalik (LK-4677)

</div>

Dated:   May 1, 2018

4937070v1

# EXHIBIT A

M Bassett
12/6/17
11:51

Attorney(s):        **Lawrence D. Minasian, Esq.**
Attorney Id No.:     **034211994**
Law Firm:         **Greenberg Minasian, LLC**
Address:         **80 Main Street, Suite 450**
                  **West Orange, NJ 07052**

Telephone No.:     **(973) 325-7711**
Fax No.:          **(973) 325-7571**
E-mail:          **LDMinasian@GMattorneys.com**
Attorney(s) for Plaintiff(s): **Emil Vogt and Michelle Vogt**

---

| | |
|---|---|
| **Emil Vogt and Michelle Vogt** | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| | MIDDLESEX COUNTY |
| Plaintiff(s) | |
| vs. | |
| **Rebounderz Franchise & Development** | DOCKET NO.: MID-L-6578-16 |
| | CIVIL ACTION |
| Defendant(s) | 𝔖𝔲𝔪𝔪𝔬𝔫𝔰 |

## FROM THE STATE OF NEW JERSEY

To the Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $ 175.00     and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com  800.222.0510    Page 1

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey statewide hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated:  __December 4, 2017__

**Michelle M. Smith**                    *Clerk of the Superior Court*

Name of Defendant to be Served: **Rebounderz Franchise & Development**

Address of Defendant to be Served: **605 Hickman Circle**
**Sanford, Florida 32771**

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510      Page 2

# Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main Street
Hackensack, NJ 07601
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Floor, Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice, First Floor
101 South Fifth Street, Suite 150
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY**
Deputy Clerk of the Superior Court
9 North Main Street
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street, P.O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake, First Floor, Court House
1 North Broad Street
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Department
Brennan Court House, First Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY**
Deputy Clerk of the Superior Court
Middlesex Vicinage
Second Floor - Tower
55 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY**
Morris County Courthouse
Civil Division
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY**
Deputy Clerk of the Superior Court
First Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

*Updated: 8/21/13*

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10153
Rev. 8/13    P2/15

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com    800.222.0510    Page 3

12/04/2017   16:46 Greenberg & Minasian                    (FAX)973 325 7571          P.005/066

**GREENBERG MINASIAN, LLC**
80 Main Street, Suite 450
West Orange, New Jersey 07052
(201)325-0071
LAWRENCE D. MINASIAN - 034211994
*Attorneys for Plaintiffs*

CIVIL RECORDS
N.J. SUPERIOR COURT
MIDDLESEX VICINAGE

2016 NOV 14  A 10 51

FILED & RECEIVED #5

Plaintiff
EMIL VOGT & MICHELLE VOGT

vs.

Defendant

REBOUNDERZ OF EDISON, REBOUNDERZ
EDISON, REBOUNDERZ EDISON, NJ
REBOUNDERZ FRANCHISE AND
DEVELOPMENT, INC., YEGLINSKI
ENTERPRISES, INC. and
JOHN DOES I-X, ABC Corporations
I-X(fictitious names),

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY
DOCKET NO.: MID-L-  6578  16

*Civil Action*

**COMPLAINT AND JURY DEMAND
WITH DISCOVERY REQUESTS**

Plaintiffs, Emil Vogt and Michelle Vogt, residing at 100 Wilton Avenue, in the Borough of

Middlesex, County of Middlesex, and State of New Jersey, by way of Complaint against the

Defendants, says:

## FIRST COUNT

1.   At all relevant times in this complaint, Defendants Yeglinski Enterprises, Inc.

("Yeglinski"), Rebounderz of Edison, Rebounderz Edison, Rebounderz Edison, NJ, John Does I-V,

and/or ABC Corporations I-V, franchises and operates Rebounderz of Edison, NJ, located at 76

Carter Drive, Edison, NJ 08817.

2.   Rebounderz Franchise and Development, Inc. ("RFD," together with Yeglinski,

"Defendants"), John Does I-V, and/or ABC Corporations I-V is a franchisor of the Rebounderz

1

brand, and is a Florida corporation with a principal place of business located at 2547 Old Lake Mary Road, Sanford, Florida 32773.

3.     Rebounderz facilities are indoor arena-style trampoline jumping centers with trampolines on the floors and trampolines on the angled sidewalls, with foam pits.

4.     Defendants Yeglinski Enterprises, Inc., Rebounderz of Edison, Rebounderz Edison, Rebounderz Edison, NJ, Rebounderz Franchise and Development, Inc. John Does I-X, and/or ABC Corporations I-X John Does I-X are responsible for the maintenance, supervision and performance of the activities and operations which take place at Rebounderz of Edison, NJ, located at 76 Carter Drive, Edison, NJ 08817, and are responsible for the design, manufacture, maintenance, operation and construction of the facility and all of its attractions.

5.     At all times material to the within cause of action, Defendants solicited business for its foam pit/trampoline and recreational facility by advertising its attractions, activities and events throughout the State of New Jersey and elsewhere.

6.     On or about December 14, 2014, the Plaintiff Emil Vogt was injured in an accident while participating in a recreational trampoline activity conducted by Defendants.

7.     On or about December 14, 2014, the Plaintiff Emil Vogt was lawfully on the premises known as Rebounderz of Edison, NJ located at 76 Carter Drive, Township of Edison, County of Middlesex, State of New Jersey as a business invitee. Although he never executed any waiver, he purchased admission to the trampoline facility which permitted him to use the foam pit/trampoline attraction and other facilities and participate in the activities promoted by the Defendants.

8.     As owners and/or operators of the aforesaid trampoline and recreational facility, Defendants owed a duty to Plaintiff, and to others lawfully upon the premises to keep the premises

2

in safe condition, free from defects and dangers, and to operate the premises, including the attractions and activities contained therein, so that invitees and guests could safely use and participate in same without being exposed to ultra hazardous dangers, hazards, defects, enhanced risks, hidden dangers, hidden traps, and/or impediments that would cause injury.

9.   The Defendants owed a duty to Plaintiff to properly train, certify and closely supervise its employees, and to follow their own self established guidelines as that all participants in the trampoline/foam pit or any other activity are protected from any and all enhanced risks and hidden dangers and are warned of any hidden traps.

10.   The Defendants owed a duty to warn the Plaintiff that the areas above the supporting springs for the trampoline were not adequately protected and that his feet could easily get trapped in the springs under the cover. The Defendants knew that the cover was a hazard that could easily allow the Plaintiff's feet to end up under the cover and easily wind up being trapped as he attempted to jump off the trampoline into the pit. The Defendants knew that if the Plaintiff's feet slipped under the cover and into the springs, the Plaintiff could be severely injured. The Defendants knew that they had the non-delegable duty to minimize and/or eliminate all foreseeable risks with reference to the foreseeable use and application for all of their trampolines and foam pit activity.

11.   In order to provide adequate warnings for all of the activities, including foam pit/trampoline activity, verbal and pictorial warnings should have been placed in open and obvious areas adjacent to the foam pit area where the activity was carried out. Defendants failed to post such warnings or provide such instructions. Furthermore, Defendants' employees overseeing the activity did not present the Plaintiff with proper oral warnings or instructions. Therefore, any warnings and instructions that were posted or provided were defective.

3

12.    In violation of the aforesaid duties, Defendants in a negligent, careless, grossly negligent and reckless manner, created, advertised, and promoted an inherently unsafe, ultra hazardous, and dangerous activity involving the foam pit/trampoline activity Rebounderz of Edison located at 76 Carter Drive, Edison, New Jersey 08817.

13.    The Defendants failed to properly conduct, supervise, attend to, care for, instruct, warn and otherwise provide for the safety of the Plaintiff. As a result, Emil Vogt was caused to sustain severe and permanent injuries.

14.    The Defendants failed to properly train their employees in safety, one on one supervision, general supervision, warnings and instructions. Defendants' employees also failed to place the Plaintiff and others on notice of the enhanced risks and hidden dangers associated with the trampoline/foam pit activity in which the Plaintiff was severely and permanently injured. In addition to the employees not being properly trained, the employees allowed the Plaintiff to expose himself to hazards, risks and dangers resulting in the Plaintiff suffering severe and permanent injuries.

15.    As a result of Defendants' negligent, grossly negligent and reckless conduct, the Plaintiff Emil Vogt sustained injuries resulting in permanent disability, disfigurement, and loss of bodily function, and loss of body member in whole or in part has incurred. He has incurred and will incur expenses for the treatment of said injuries in the future. Plaintiff Emil Vogt was caused painful, severe and permanent injuries, and as a further result thereof, the Plaintiff suffered fright and shock, great pain, suffering, mental anguish and sustained further injuries and damage.

16.    As a further result of the Defendants' negligence, the Plaintiff has incurred and will continue to incur expenses for doctors, hospitals and hospital care and other medical treatment for his injuries. In addition, Plaintiff has been disabled and unable to perform his usual functions and

4

12/04/2017   16:46 Greenberg & Minasian                    (FAX)973 325 7571        P.009/066

has been caused and will be caused great pain and suffering to his great loss and damage, which will result in past, present and future lost wages and earnings. Due to the Plaintiffs resulting injuries, he has been permanently disabled and will not be able to perform his usual functions resulting in great pain and suffering. This has impaired his earning capacity, quality and enjoyment of life for the rest of his life.

WHEREFORE, the Plaintiff Emil Vogt demands judgment on the First Count against the Defendants, jointly and severally, for compensatory damages, together with interest, costs of suit.

## SECOND COUNT

1. Plaintiff, Michelle Vogt, repeats each and every allegation contained in the First Count as if set forth herein verbatim.

2. On the date of accident, as aforementioned and at all other times relevant herein, Plaintiff, Michelle Vogt was the lawful wife of the Plaintiff, Emil Vogt and as such she is entitled to the services, society and companionship of her husband and is jointly responsible for his debts.

3. As a result of the reckless, careless and negligence of Defendants and the injuries suffered by the Plaintiff, Emil Vogt, Michelle Vogt was deprived of the services and society of her husband. As a further result of the Defendants' negligence, Plaintiff, Michelle Vogt was caused to expend money and will be caused to expend monies in the future for the payment of hospitals, doctors and other medical services provided to her husband, arising out of the injuries caused by the Defendants. In addition, Plaintiff will in the future be deprived of his services and society.

5

12/04/2017    16:46 Greenberg & Minasian                    (FAX)973 325 7571        P.010/066

WHEREFORE, Plaintiff, Michelle Vogt, demands judgment on the Second Count against the Defendants, jointly and severally, for compensatory damages, together with interest, costs of suit and for such further relief as the Court deems equitable and just.

## THIRD COUNT

1.    Plaintiff Michelle Vogt repeats each and every allegation of the First Count and Second Count, as if set forth herein verbatim.

2.    On the date of accident, as aforementioned and at all other times relevant herein, Plaintiff, Michelle Vogt was the wife of Emil Vogt.

3.    On or about December 14, 2014, Plaintiff Michelle Vogt, witnessed the event set forth above, which caused serious bodily injury to her husband, Plaintiff Emil Vogt as a result of Defendants' negligence. As a result of witnessing this event, Plaintiff Michelle Vogt experienced severe emotional distress by observing this event, which has resulted in personal injuries, pain, suffering and disability both temporary and permanent in nature.

4.    As a further result of the Defendants' negligence, Plaintiff Michelle Vogt has incurred and will continue to incur expenses for doctors, hospital and other medical treatment for her injuries. In addition, Plaintiff Michelle Vogt has been disabled and unable to perform her usual functions and has been caused and will be caused great pain and suffering, to her great loss and damage.

WHEREFORE, Plaintiff, Michelle Vogt demands judgment on the Third Count against the Defendants, jointly and severally, for compensatory damages, together with interest, costs of suit and for such further relief as the Court deems equitable and just.

6

GREENBERG MINASIAN, LLC
Attorneys for Plaintiffs

Dated: November 9, 2016                    LAWRENCE D. MINASIAN, ESQ.

## JURY DEMAND

Plaintiff demands trial by jury as to all issues involved herein.

GREENBERG MINASIAN, LLC
Attorneys for Plaintiff

Dated: November 9, 2016                    LAWRENCE D. MINASIAN, ESQ.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R.4:25-4, LAWRENCE D. MINASIAN is hereby designated as Trial Counsel of this matter.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.    What voluntary standards were followed in designing the subject facility?

2.    Provide a copy of the proposed design of the subject facility with all of the trampolines .

3.    Provide a copy of the engineering design of the subject facility with all of the trampolines within the engineering drawing.

4.    Provide a copy of the resume(s) of the person or persons that were responsible for the design and construction of the subject facility with all of the trampolines.

7

5.      Provide a detailed engineering drawing of the separation between each of the trampolines.

6.      Provide the specification of the padding above the springs between the trampolines.

7.      Provide the testing data associated with the padding between the springs, ie. absorption and dissipation of impact forces.

8.      Provide a copy of each and every warning posted and its location throughout the facility.

9.      Provide a copy of all of the posted instructions and its location throughout the facility.

10.     Provide a copy of all of the video instructions being shown in the facility to Defendant's customers and state where the video tapes are shown for December 14, 2014.

11.     Who created the warnings posted in the facility?

12.     Provide a copy of that persons resume.

13.     Who created the posted instructions in the facility?

14.     Provide a copy of that persons resume.

15.     Who created the video that is shown at the facility?

16.     Provide a copy of that persons resume.

17.     Provide the employment application and resume of the manager of the facility at the time of the subject accident?

18.     What facility containing trampolines was the standard that the subject facility was copied from?

8

19.     With reference to ASTM F2225 standard, what part of that standard was complied with by the subject facility?

20.     Provide a copy of the risk analysis that was performed on the subject facility prior to allowing the public to use the trampolines.

21.     Provide a copy of the risk analysis that was performed on the foam pit/trampoline activity prior to allowing the public to use the subject trampolines.

22.     Provide a copy of the risk analysis that was performed on a subject facility with reference to adults prior to allowing the public to use the subject foam pit/trampoline activity.

23.     Provide a list of all standard organizations that any member of the management or ownership and employees of the subject facility belong to.

24.     Provide a list of the corporate organizations that the facility is associated with.

25.     Provide the copy of all names and contacts of the owners, management and employees of the subject facility associated with those memberships and identify which organization they are associated with.

26.     Provide a copy of the resumes and/or the employment application of each of the names supplied "25."

27.     Provide publications distinguishing an inflatable activity versus a trampoline and the foam pit activity.

28.     Provide the rational of the subject facility as to why there is no proper covering to protect the plaintiff and others from coming in contact with the springs that support the trampoline for the foam pit/trampoline activity.

9

12/04/2017  16:47 Greenberg & Minasian  (FAX)973 325 7571  P.014/066

29. Provide all test data regarding drop tests onto the separation padding and springs between trampolines at the subject facility and the final design for the foam pit/trampoline activity.

30. Provide a copy of the waiver that you require each visitor to sign prior to using the trampolines.

31. Provide a copy of the resume of the individual who created the waiver that was in use by Defendants on the date of the accident?

32. Provide a list of the Consumer Product Safety Commission's (CPSC) publications in your possession regarding the number of accidents and resulting injuries associated with trampoline parks such as the subject one.

33. The names, last known addresses and telephone numbers and employment applications of all agents, servants and employees of the defendants who were present at or near the premises at the time of the accident.

34. A copy of the video surveillance recordings depicting the "foam pit" on December 14, 2014, which includes a recording of Plaintiff's incident, starting two hours prior to the incident and ending one hour after the incident.

35. Any and all statements made by any party to this lawsuit, whether written or oral, including any co-plaintiff(s) or co-defendant(s), their agents, representatives or employees concerning the action or subject matter previously made by the Plaintiff pursuant to R.4:10-2( c). For the purposes of this rule, a statement previously made is (1) a written statement signed or otherwise adopted or approved by the person making it; or (2) a stenographic, mechanical,

10

electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital
of an oral statement by the person making it and contemporaneously recorded.

36.    Any and all statements made by any witnesses to the events described in all of the
paragraphs of Plaintiff's Complaint. A statement made is (1) a written statement signed or
otherwise adopted or approved by the person making it; or (2) a stenographic, mechanical,
electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital
of an oral statement by the person making it and contemporaneously recorded.

37.    Any and all statements made by any person other than defendant(s) which relate
or refer in any way to the incident described in Plaintiff's Complaint. A statement made is (1) a
written statement signed or otherwise adopted or approved by the person making it; or (2) a
stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a
substantially verbatim recital of an oral statement by the person making it and
contemporaneously recorded.

38.    Any and all written reports including all notes, first drafts or previous versions of
any report rendered by Defendant's proposed expert witnesses including, but not limited to, any
medical expert witnesses intended or not intended to be called at the time of trial concerning the
action or subject matter previously made by the Plaintiff, pursuant to R.4:10-2(d), et seq. For the
purposes of this rule, a statement previously made is (1) a written statement signed or otherwise
adopted or approved by the person making it; or (2) a stenographic, mechanical, electrical, or
other recording, or a transcription thereof, which is a substantially verbatim recital of an oral
statement by the person making it and contemporaneously recorded.

11

39.     Any and all books, treatises, commentaries, reports, statutes, codes, ordinances, rules, regulations or other published documents referred to and utilized by or relied upon by any expert witness whom Defendant(s) intend(s) to call at trial.

40.     Any and all blueprints, charts, diagrams, drawings, graphs, maps, plats, plans, photographs, models or other visual reproductions of any objects, place or thing prepared or utilized by, referred to or relied upon by any expert witnesses whom Defendant(s) intend(s) to call at time of trial.

41.     A photostatic copy of any photographs or surveys of the scene of the accident or of any objects or persons involved therein whether in the possession of the Defendant, the Defendant's attorneys or the possession of any representatives of the Defendant's insurance carriers.

42.     A copy of any and all written reports or summaries of oral reports, as well as a copy of the curriculum vitae, of any and all experts that have supplied reports to Defendant's attorney, whether or not he or she is expected to testify as per R.4:10-2(d)(1).

43.     A copy of any and all hospital and medical records regarding any medical treatment received by Plaintiff which is alleged to relate to any injuries sustained as a result of any prior or subsequent accidents, disease or illness to those alleged in the Complaint.

44.     A copy of all scheduled maintenance records from one year preceding the accident to one year after the accident for the maintenance of the trampoline in question, whether obtained by you or an outside contractor.

45.    Any and all documents setting forth Defendant's loss prevention policy as it relates to safety of the premises including and written safety procedures, safety manuals, or safety memos.

46.    A copy of all scheduled maintenance records from one year preceding the accident to one year after the accident for the maintenance of flooring, whether obtained by you or an outside contractor.

47.    Please provide a copy of the lease which was in effect on December 14, 2014 between the Defendant and all other entities for the premises known as Rebounderz of Edison.

48.    A copy of any maintenance company contracts that were in effect on December 14, 2014 regarding the premises known as Rebounderz of Edison.

49.    A copy of any accident report, incident report or other documentation prepared by any agents, servants or employees of the defendants contemporaneously with the accident which is the subject matter of this complaint.

50.    Any and all documents setting forth Defendant's surveillance recording retention policy as it relates to safety of the premises including and written safety procedures, safety manuals, or safety memos.

51.    Any and all documents you received from Plaintiff, Plaintiff's attorneys or someone acting on Plaintiff's behalf regarding the subject matter of this complaint.

52.    All insurance agreements and policies maintained by defendants effective December 14, 2014, in accordance with Rule 4:10-2(b).

53.    Copies of any and all photographs, videos, surveys, sketches, diagrams, blueprints or any other documentary evidence concerning the premises known as Rebounderz of Edison, specifically the area in the vicinity of Plaintiff's fall.

54.    Copies of any and all photographs, videotapes, recordings, or any other documentary evidence of the plaintiff and plaintiff's accident whenever recorded since December 14, 2014, including, but not limited to, security videotapes of the premises on December 14, 2014, depicting the plaintiff's accident, and the flow of other individuals in any area near the accident at the premises.

55.    Any and all documentation relating to any inspection performed at the premises by any municipal, state or federal office or agency, or private company, including, but not limited to, all notices, reports, citations, punch lists, bills, receipts or other documents relating to or resulting from such inspection of the area of plaintiff's fall from December 14, 2012 to July 1, 2015.

56.    Any and all documentation relating to corporate, business, or trade name filings for any of the defendants named in the Complaint.

57.    A copy of the entire investigation file, including but not limited to copies of any and all statements of all parties and all photographs of the accident scene.

58.    Copies of any and all written manuals, policies or procedures regarding the filing of accident reports which were in effect on or about August 2, 2013.

59.    A copy of any waiver executed by Plaintiff or some on Plaintiff's behalf which you allege applies to the incident alleged in the Complaint.

14

## DEMAND FOR ANSWERS TO INTERROGATORIES

DEMAND is hereby made of the Defendant(s) for certified answers to Uniform Interrogatories Form C and Form C(2), contained in Appendix II of the Rules of Court, pursuant to R. 4:17-1(b)(ii) within the time prescribed by the Rules of Court, as well as answers to the following Supplemental Interrogatories.

1.     State the names of all employees working in the facility on the floor where Plaintiff fell at the time of accident as alleged in the Complaint, including their full name, present address, telephone number and job title.

2.     Please provide the names and addresses of the individual(s) who were stationed at the trampoline pit at the time of Plaintiff's injury.

3.     State whether there were any eyewitnesses to the accident as alleged in the Complaint, setting forth their names, present addresses and telephone numbers, together with a summary of what each witness observed.

4.     State whether you allege that any other outside company, including outside maintenance companies, may be contractually liable for the Plaintiff's damages alleged in the Complaint. Give the full name, address and telephone number of any party you list and a copy of any contract upon which you base your allegation.

5.     What risks inherent involved in the activities performed at your facility is explained to the people that signed the waiver with reference to the foam pit/trampoline activity?

6.     What information do you provide the individual signing the waiver to determine whether they understood the terms of the waiver?

15

7.     What protocol was followed by the management and/or employees of the subject facility that allowed for the supervision of the plaintiff prior to and up to the time he was injured?

8.     What designs were incorporated in the subject trampoline to minimize and/or eliminate those risks associated with the foam pit/trampoline activity?

9.     Why is the foam pit/trampoline activity at a subject facility at the time the plaintiff was injured not defectively designed for its foreseeable uses and its foreseeable misuses?

10.     What warning and/or instructions were presented to the Plaintiff, orally or posted that explained the enhanced risks and hidden dangers associated with the foam pit/trampoline activity in which the Plaintiff participated in when he was injured?

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any Court or a pending Arbitration proceeding, nor is any other action or Arbitration contemplated. All parties known to Plaintiff, who should have been joined in this action have been joined.

GREENBERG MINASIAN, LLC
Attorneys for Plaintiffs

Dated: November 9, 2016                      LAWRENCE D. MINASIAN, ESQ.

16

12/04/2017   16:48 Greenberg & Minasian                    (FAX)973 325 7571       P.021/066
MIDDLESEX VICINAGE CIVIL/  VISION
    P O BOX 2633
    56 PATERSON STREET
    NEW BRUNSWICK    NJ 08903-2633

                                    TRACK ASSIGNMENT NOTICE
    COURT TELEPHONE NO. (732) 519-3728
    COURT HOURS  8:30 AM - 4:30 PM

                    DATE:    NOVEMBER 15, 2016
                    RE:      VOGT EMIL VS REBOUNDERZ OF EDISON
                    DOCKET: MID L -006578 16

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

    DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON ARTHUR BERGMAN

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM        003
AT:   (732) 519-3745 EXT 3745.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH   R.4:5A-2.

                    ATTENTION:

                              ATT: LAWRENCE D. MINASIAN
                              GREENBERG MINASIAN LLC
                              80 MAIN ST
                              WEST ORANGE        NJ 07052

    JUMSRI0

12/04/2017   16:48 Greenberg & Minasian                    (FAX)973 325 7571           P.022/066

Appendix XII-B1

## CIVIL CASE INFORMATION STATEMENT (CIS)

### Use for Initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
Pleading will be rejected for filing, under *Rule* 1:5-6(c),
If information above the black bar is not completed
or attorney's signature is not affixed

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>LAWRENCE D. MINASIAN, ESQ. - 034211994 | TELEPHONE NUMBER<br>(973) 325-7711 | COUNTY OF VENUE<br>Middlesex |
| --- | --- | --- |
| FIRM NAME (if applicable)<br>GREENBERG MINASIAN, LLC | | DOCKET NUMBER (when available)<br>L - 6578 16 |
| OFFICE ADDRESS<br>80 MAIN STREET, SUITE 450<br>WEST ORANGE, NEW JERSEY 07052 | | DOCUMENT TYPE<br>COMPLAINT |
| | | JURY DEMAND   ■ YES   ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Emil Vogt and Michelle Vogt,<br>Plaintiffs | CAPTION<br>Vogt v. Rebounderz, et al. |
| --- | --- |

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>605 | HURRICANE SANDY<br>RELATED?<br>☐ YES   ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ■ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A-27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| --- | --- | --- |
| RELATED CASES PENDING?<br>☐ YES   ■ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES   ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (If known)   ☐ NONE   ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>☐ YES   ■ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE<br>☐ FAMILIAL | ☐ FRIEND/NEIGHBOR<br>☐ BUSINESS | ☐ OTHER (explain) |
| --- | --- | --- | --- |

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES   ■ No |
| --- |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| ☐ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES   ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
| --- | --- | --- |
| | WILL AN INTERPRETER BE NEEDED?<br>☐ YES   ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

Effective 10/01/2016, CN 10517                                                            page 1 of 2

---

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

---

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
506 PIP COVERAGE
510 UM or UIM CLAIM (coverage issues only)
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (summary action)
999 OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
621 UM or UIM CLAIM (includes bodily injury)
699 TORT – OTHER

**Track III - 450 days' discovery**
005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
620 FALSE CLAIMS ACT
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | |
|---|---|
| 271 ACCUTANE/ISOTRETINOIN | 292 PELVIC MESH/BARD |
| 274 RISPERDAL/SEROQUEL/ZYPREXA | 293 DEPUY ASR HIP IMPLANT LITIGATION |
| 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 FOSAMAX | 296 STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 STRYKER TRIDENT HIP IMPLANTS | 297 MIRENA CONTRACEPTIVE DEVICE |
| 286 LEVAQUIN | 299 OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 YAZ/YASMIN/OCELLA | 300 TALC-BASED BODY POWDERS |
| 289 REGLAN | 601 ASBESTOS |
| 290 POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 PROPECIA |
| 291 PELVIC MESH/GYNECARE | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category   ☐ Putative Class Action        ☐ Title 59

# EXHIBIT B

# COMMERCIAL LINES COMMON POLICY DECLARATIONS

**INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BY AN "X":**

Stock Company

[X] PENN-AMERICA INSURANCE COMPANY

[ ] PENN-STAR INSURANCE COMPANY

[ ] PENN-PATRIOT INSURANCE COMPANY

**Bala Cynwyd, Pennsylvania 19004**

**State Control Number**
A290258

Renewal of Number _____

**POLICY NUMBER:** PAC7053629

1. **NAMED INSURED:** REBOUNDERZ FRANCHISE & DEVELOPMENT INC

   **DBA:**

   **MAILING ADDRESS:** 2547 OLD LAKE MARY ROAD

   SANFORD          FL 32773

2. **POLICY PERIOD:** From _____ 03/12/2014 _____ To _____ 03/12/2015 _____ at 12:01 A.M.
   Standard Time at your mailing address shown above.

3. **FORM OF BUSINESS:** CORPORATION          **OTHER DESC:**

4. **BUSINESS DESCRIPTION:** INDOOR TRAMPOLINE-FRANCHISE

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

5. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM | |
|---|---|---|
| Commercial General Liability Coverage Part | $ | 799.00 |
| Commercial Property Coverage Part | $ | NOT COVERED |
| Commercial Crime Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Professional Liability Coverage Part | $ | NOT COVERED |
| Liquor Liability Coverage Part | $ | NOT COVERED |
| Commercial Umbrella Coverage Part | $ | NOT COVERED |
| Owners Contractors Protective Coverage Part | $ | NOT COVERED |
| TRIA | $ | NOT COVERED |

6. **TOTAL PREMIUM PAYABLE AT INCEPTION** $ 799.00

   TAX: $ 49.20

   INSPECTION FEE: $ 150.00

   POLICY FEE: $ 35.00

   FHCF: $ 12.79

   SFFL: $ 1.97

   Other: $ _____

   **TOTAL** $ 1,047.96

SURPLUS LINES AGENT:
Dawn M. Belin LIC.#A290258
3363 W Commercial Blvd, Ste. 115 Ft
Lauderdale, FL 33309
PROD AGT._RON BROWN
ADDRESS_1021 DOUGLAS AVE
CITY/STATE_ALTAMONTE SPRINGS,
FL 32714
THIS INSURANCE IS ISSUED
PURSUANT TO THE FLORIDA
SURPLUS LINES LAW. PERSONS
INSURED BY SURPLUS LINES
CARRIERS DO NOT HAVE THE
PROTECTION OF THE FLORIDA
INSURANCE GUARANTY ACT TO THE
EXTENT OF ANY RIGHT OF
RECOVERY FOR THE OBLIGATION
OF ANY INSOLVENT UNLICENSED
INSURER.

NO FLAT CANCELLATIONS
PERMITTED

7. FORM(S) AND ENDORSEMENT(S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:*
   **AS PER FORM COMSCHD(10/00) ATTACHED**

   *Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**Agency Code:** 02428

615 Crescent Executive Court, Suite 432
Lake Mary, FL 32746
SOL          03/28/14

By _~Dawn M. Belin~_

**Authorized Representative**

# COMMERCIAL LINES COMMON POLICY DECLARATIONS
# SCHEDULE OF FORMS AND ENDORSEMENTS

POLICY NUMBER:
**PAC7053629**

NAMED INSURED
**REBOUNDERZ FRANCHISE & DEVELOPMENT INC**

Form/Endorsement No./Edition Date

Form/Endorsement No./Edition Date
**ADDITIONAL FORMS ATTACHED**
• NAA705 (10-10) GLOBAL INDEMNITY PRIVACY NOTICE

Forms Applicable - PAC COVERAGE

| | |
|---|---|
| • NAA169(10-10) | CLAIMS REPORTING PROCEDURES |
| PA01412(03-01) | POLICY ISSUANCE CHECKLIST |
| • IL0003(09-08) | CALCULATION OF PREMIUM |
| • IL0017(11-98) | COMMON POLICY CONDITIONS |
| • S1003(06-01) | MINIMUM EARNED PREMIUM |
| • SAA100(01-12) | IN WITNESS CLAUSE |
| • SAA233(12-09)AllRisks | SERVICE OF SUIT |

Forms Applicable - GL COVERAGE

| | |
|---|---|
| • S2000(06-01) | GL SUBJEC |
| • IL0021(09-08) | NUCLEAR ENERGY LIAB EXCL |
| • CG0001(04-13) | CGL COVERAGE FORM |
| • CG2011(04-13) | AI - MANAGERS/LESSORS OF PREMISES |
| • CG2147(12-07) | EMPLOYMENT RELATED PRAC EXCL |
| • CG2155(09-99) | TOTAL POLLUTION EXCLUSION |
| • CG2167(12-04) | FUNGI OR BACTERIA EXCLUSION |
| • CG2173(01-08) | EXCL OF CERTIFIED ACTS OF TERRORISM |
| • CG2186(03-05) | SILICA OR SILICA RELATED DUST EXCL |
| • CG2426(04-13) | AMENDMENT OF INSURED CONTRACT DEF |
| • S2002(06-02) | COMBINED PROVISIONS END'T |

Forms Applicable - STATE FORMS

| | |
|---|---|
| • NAA155(10-10) | FL POLICYHOLDER NOTICE |

S1007

INSURED



**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**DECLARATIONS**

Stock
Company

**POLICY NUMBER:** <u>PAC7053629</u>

1.  **NAMED INSURED:** REBOUNDERZ FRANCHISE & DEVELOPMENT INC

2.  **LIMITS OF INSURANCE - INSURANCE APPLIES ONLY FOR COVERAGE FOR WHICH A LIMIT OF INSURANCE IS SHOWN.**

| | | |
|---|---|---|
| General Aggregate Limit (Other than Products/Completed Operations) | $ 2,000,000 | |
| Products/Completed Operations Aggregate Limit | $ INCLUDED | |
| Each Occurrence Limit | $ 1,000,000 | |
| Personal & Advertising Injury Limit | $ 1,000,000 | |
| Damage to Premises Rented to You Limit | $ 100,000 | any one premises |
| Medical Expense Limit | $ 5,000 | any one person |

3.  **LOCATIONS** of all premises you Own, Rent, or Occupy

| | Address | City | State | Zip |
|---|---|---|---|---|
| No. 01 | 2547 OLD LAKE MARY ROAD | SANFORD | FL | 32773 |

4. 

| | CLASS ** | PREMIUM BASIS Code / Exposure | RATES Prod/CO | RATES All Other | ADVANCE PREMIUM Prod/CO | ADVANCE PREMIUM All Other |
|---|---|---|---|---|---|---|
| | ** If Classifications are Numbered, the coverage applies to the corresponding Location No. | | | | | |
| No. | 61226 | a)    1,819 | INCLUDED | 309.981 | INCLUDED | 564.00 |

Building or Premises - office.  Other than Not-For-Profit Products-completed operations are subject to the General Aggregate Limit.

| No. | 68706 | a)    3,381 | INCLUDED | 69.462 | INCLUDED | 235.00 |
|---|---|---|---|---|---|---|

Warehouses - private.  Other than Not-For-Profit Products-completed operations are subject to the General Aggregate Limit.

| No. | 49950 | e)    1 | | FLAT | | INCLUDED |
|---|---|---|---|---|---|---|

Additional Insured

No.

No.

** If Classifications are Numbered, the coverage applies to the corresponding Location No.

**TOTAL: $** 799.00

| | | |
|---|---|---|
| (s) gross sales - per $1000 | (c) total cost - per $1000 | (m) admissions - per 1000    (e) each |
| (p) payroll - per $1000 | (a) area - per 1000 sq. ft. | (u) units    (o) other |

5.  **Policy may be AUDITABLE**    (t) see classification notes in company or ISO Commercial Lines Manual

6.  **SPECIFIC GENERAL LIABILITY FORMS/ENDORSEMENTS**
    **AS PER FORM COMSCHD(10/00) ATTACHED**

**This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Common Policy Conditions, Coverage Part Coverage Form(s) and any other applicable forms and endorsements.**

POLICY NUMBER:  PAC7053629

COMMERCIAL GENERAL LIABILITY
CG 20 11 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –   MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Designation Of Premises (Part Leased To You): |
| --- |
| 2547 OLD LAKE MARY ROAD<br>SANFORD,FL 32773 |

| Name Of Person(s) Or Organization(s) (Additional Insured): |
| --- |
| SHOEMAKER CONSTRUCTION<br>2525 OLD LAKE MARY RD<br>SANFORD,FL 32773 |

| Additional Premium:      $ INCLUDED |
| --- |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II** - **Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III** - **Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

©    Insurance Services Office, Inc., 2012

INSURED

FROM: <VZAWACKI@allrisks.com>
TO: southdocs@penn-america.com
SENT: Wednesday, April 09, 2014 12:38:09 PM Eastern Daylight Time
SUBJECT: REBOUNDERZ FRANCHISE & DEVELOPMENT (P:PAC7053629)
ATTACHMENTS: 582965.pdf;
=========================================================

Attached you will find the policy for the above Insured.  In order to provide you with faster service, we are emailing the policy to you.

If your Insured's State of Location is MI, VT or WV, we will also mail a hard copy of the Policy to you. Claim Kits and/or Pamphlets will continue to be sent via regular mail and will be identified in that mailing with a cover sheet providing the Insured Name and Policy Number.


Thank you for choosing All Risks.  We appreciate your business.

VERONICA ZAWACKI
ALL RISKS LTD.
10150 YORK RD., 5TH. FL.
HUNT VALLEY, MD 21030
PHONE: 410-828-5810 X3679
FAX: 410-828-8179
EMAIL: VERONICA.ZAWACKI@ALLRISKS.COM

'GET IT DONE RIGHT.NOW."



http://www.allrisks.com

"Get it Done Right. Now."

This email is intended for the addressee shown. It contains information that is confidential and protected from disclosure. Any dissemination or use of this transmission or its contents by unintended persons is strictly prohibited. If this email relates to placement of coverage through All Risks, please note that no coverage will be bound and no changes will be made without a written "Confirmation of Insurance", Binder, Endorsement or Reinstatement from our office. Coverage cannot be assumed if you do not receive one of the aforementioned notices.

## FLORIDA POLICY HOLDER NOTICE

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

# GLOBAL INDEMNITY GROUP, INC.

## PRIVACY NOTICE

We at Global Indemnity Group, Inc. which includes Diamond State Insurance Company, Penn-America Insurance Company, Penn-Patriot Insurance Company, Penn-Star Insurance Company, United National Insurance Company, United National Casualty Insurance Company, United National Specialty Insurance Company and our affiliated companies and subsidiaries, are required to protect our customers' nonpublic personal financial information.

We collect your nonpublic personal financial information from the following sources:

- Information obtained from you, including information from your application, such as name, address, telephone number, social security number, assets and income.

- Information about transactions and experiences, such as your premium payment and claims history.

- Information from a consumer reporting agency, such as your credit history.

WE DO NOT DISCLOSE YOUR NONPUBLIC PERSONAL FINANCIAL INFORMATION, EXCEPT AS PERMITTED OR REQUIRED BY LAW. WE RESERVE THE RIGHT, HOWEVER, TO CHANGE THIS POLICY AT ANY TIME. SHOULD THIS POLICY CHANGE WE WILL GIVE AFFECTED CUSTOMERS AN OPPORTUNITY TO DIRECT THAT THEIR NONPUBLIC PERSONAL FINANCIAL INFORMATION NOT BE DISCLOSED.

We maintain electronic, physical and procedural safeguards that comply with Federal regulations to protect your nonpublic personal financial information. We limit access to your nonpublic personal financial information to those employees who need to know that information to perform their job responsibilities.

We disclose nonpublic personal financial information of former customers to affiliated and nonaffiliated third parties as permitted by law.



Penn-America Insurance Company ®
Penn-Star Insurance Company ®
Penn-Patriot Insurance Company ®

United National Insurance Company ®
Diamond State Insurance Company ®
United National Specialty Insurance Company ®
United National Casualty Insurance Company ®

CLAIMS REPORTING PROCEDURES

The Member Companies of Global Indemnity Group, Inc. strive to provide quality claims service.
In the event of a claim or potential claim, please submit information about the claim immediately to
us. Claims can be submitted via company web site, e-mail, facsimile, phone or mail.

Information for submitting:

- Web Address               http://www.penn-america.com Click on Claims
- Email address             Claims@global-indemnity.com
- Fax number                610-660-8885
- Phone numbers             800-788-4780 or 610-660-8877
- Mailing address           Global Indemnity Group, Inc. / Claims
                            P.O. Box 532
                            Willow Grove, PA 19090

For Emergency Services after normal business hours (7:30am-5:00pm EST), please call
800-621-5410.

IL 00 03 09 08

# CALCULATION OF PREMIUM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 03 09 08          Copyright Insurance Services Office, Inc., 2007          **Page 1 of 1**

INSURED

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



## MINIMUM EARNED PREMIUM
## CANCELLATIONS AND AUDITS

It is hereby understood and agreed that in the event of cancellation of coverage by the insured, the minimum earned premium under this policy shall be _____ 25 % _____ of the policy premium.

It is further understood the minimum earned premium of this policy shall be _____ 100 % _____ of the policy premium if the policy is in effect for the full term and the audit shows a lower exposure than estimated.

S1003 (8/91)                                            INSURED

# In Witness Clause

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.


Secretary                                         Executive Vice President



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT CLAUSE

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS IN THIS POLICY

We appoint the highest State official in charge of insurance affairs (Commissioner of Insurance, Director of Insurance, Insurance Commissioner, Executive Secretary, Superintendent of Insurance, or such other official title as designated by the State) of the State of **FLORIDA**                    and his successor or successors in office as his and their duly authorized deputies, as our true and lawful attorney in and for the aforesaid State, upon whom all lawful process may be served in any action, suit or proceeding instituted in the said State by or on behalf of any insured or beneficiary against us, arising out of this insurance policy, provided a copy of any process, suit complaint or summons is sent by certified or registered mail to Linda C. Hohn, Esquire
    **PENN-AMERICA**          Insurance Company, Three Bala Plaza East, Suite 300, Bala Cynwyd, PA  19004.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

    **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

        **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

        **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

Copyright ISO Properties, Inc., 2007
INSURED

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright ISO Properties, Inc., 2007
INSURED

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II . Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II . Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II . Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 ©   Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 ©   Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request. demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent:

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured:

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would quality under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises:

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** . Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

    ©   Insurance Services Office, Inc., 2012    CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   ©   Insurance Services Office, Inc., 2012   CG 00 01 04 13

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** . Coverage **A** . Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 ©   Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

©   Insurance Services Office, Inc., 2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

©   Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** . Coverage **A** . Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

  **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

  **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

  **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

  provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 © Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs. tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee. salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

   ©   Insurance Services Office, Inc., 2012   CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**INSURED**

©   ISO Properties, Inc., 2006

CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

ISO Properties, Inc., 2003
INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Copyright ISO Properties, Inc., 2007
INSURED

COMMERCIAL GENERAL LIABILITY

CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA - RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **Silica Or Silica-Related Dust**

    **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

    **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **Silica Or Silica-Related Dust**

    **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

  **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

  **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

ISO Properties, Inc., 2004

**INSURED**

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

         ©    Insurance Services Office, Inc., 2012         



# COMBINED PROVISIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Part ▪ Commercial Professional Liability Coverage Part
Liquor Liability Coverage Form**

In consideration of the premium charged it is agreed that the following special provisions apply to this policy.

## PUNITIVE DAMAGES EXCLUSION

It is part of the conditions of this policy that the Company shall not be liable for any damages awarded against an insured as punitive or exemplary damages.

## ASBESTOS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs arising out of:

(A) Asbestos or any asbestos related bodily injury or property damage; or
(B) Any alleged act, error, omission or duty involving asbestos, its use, exposure, presence, existence, detection, removal, elimination, transportation, disposal or avoidance; or
(C) The use, exposure, presence, existence, detection, removal, elimination or avoidance of asbestos in any environment, building or structure.

## EARTH MOVEMENT EXCLUSION

In consideration of the premium charged,  it is understood and agreed that this policy specifically excludes and does not extend to or provide coverage or indemnity for any claim of liability for bodily injury or property damage caused by,  resulting from, attributable or contributed to,  or aggravated by the subsidence or movement of land as a result of earthquake,  landslide,  mudflow,  earth sinking or shifting,  resulting from, aggravated by or contributed to by operations of the named insured or any subcontractor of the named insured.

## IMPORTANT NOTICE TO FLORIDA POLICYHOLDERS

Please Read:
The following applies to all Policyholders that are written by approved non-admitted insurance companies authorized to write business in the State of Florida.

**The Florida Office of Insurance Regulation** has issued an EMERGENCY ASSESSMENT which requires your Surplus Lines Insurance Agent to collect from you a MANDATORY FEE equal to 1.3% of your premium for your new or renewal policy, or any endorsements to those policies, which become effective on or after January 1, 2011. This Assessment will be utilized by the State of Florida in order to provide funds to the **Florida Hurricane Catastrophe Fund**.

The amount of your assessment is displayed on your billing statement as Florida Hurricane Catastrophe Fund. The Surplus Lines Insurance Agent is required to collect the 1.3% assessment and is responsible for its remittance to the Florida Surplus Lines Service Office. Please include this amount when you remit your premium. In the event this amount is not included, we are REQUIRED to cancel your policy for non-payment of premium.

If you have any questions concerning this assessment please contact your agent immediately.

NAA-155 (10/2010)                                                    Page 1 of 1

EXHIBIT C

**From:** Dexter Ryan [mailto:dexter@rebounderz.com]
**Sent:** Thursday, January 18, 2018 10:22 AM
**To:** Mawby, Cheryl <mawby@global-indemnity.com>
**Subject:** Re: claim#18000042 Emil Vogt

Cheryl,

Kenny Yeglinski contacted our office about the interrogatories on or around May 22nd -23rd of 2017 for this case. Prior to that we learned of the injury when it occurred in 2014.

Regards,

Dexter

On Thu, Jan 18, 2018 at 9:59 AM, Mawby, Cheryl <mawby@global-indemnity.com> wrote:

Do you know who contacted you and when they contacted you?


**Cheryl A. Mawby**

Senior Claims Examiner II

**Global Indemnity Group**

*A member of Global Indemnity Limited*

PO Box#532

Willow Grove, PA 19090

Phone: 610.668-3381

Fax:    610-660-8885

cmawby@global-indemnity.com

# EXHIBIT D



GLOBAL INDEMNITY
GROUP

American Reliable Insurance Company®
Diamond State Insurance Company®
Penn-America Insurance Company®
Penn-Patriot Insurance Company®
Penn-Star Insurance Company®
United National Insurance Company®
United National Specialty Insurance Company®

**Cheryl Mawby**
Direct Line: (610) 668-3381
cmawby@global-indemnity.com

January 23, 2018

<u>**VIA UPS GROUND
AND U.S. FIRST CLASS MAIL**</u>

Rebounderz Franchise and Development, Inc.
605 Hickman Circle
Sanford, Florida 32771

ATTN:  Dexter Ryan

Re:    <u>**Emil Vogt & Michelle Vogt v. Rebounderz of Edison, et al.**</u>
      **Docket No.:   MID-L-6578-16**
      **Insured:       Rebounderz Franchise & Development Inc.**
      **Policy No.:    PAC7053629**
      **Claim No.:     18000042**

Dear Mr. Ryan:

Penn-America Insurance Company ("Penn-America") is in receipt of a complaint filed against
Rebounderz Franchise and Development, Inc. ("Rebounderz" or "you") in the Superior Court of
New Jersey Law Division, Middlesex County, Docket No.: MID-L-6578-16, involving allegations
of bodily injury at a Rebounderz franchise location (the "Underlying Action").

Penn-America has reviewed the allegations of the complaint in the Underlying Action, along with
the terms, conditions and exclusions contained in commercial lines policy no. PAC7053629 issued
to Rebounderz. Given the information provided to date, Penn-America will agree to assign counsel
to defend Rebounderz in the Underlying Action, but will do so subject to a full and complete
reservation of Penn-America's rights, including but not limited to its right to terminate and
withdraw its defense at any time, and to deny coverage to Rebounderz for the Underlying Action.
The purpose of this letter is to explain to you the basis for our reservation of rights. <u>Please note
that you have the right to accept or reject Penn-America's offer of a defense under a reservation
of rights.</u>

Dexter Ryan
January 23, 2018
Page 2

## FACTUAL BACKGROUND

The Underlying Action is a three count complaint filed by plaintiffs Emil and Michelle Vogt ("Plaintiffs"), which names the following as defendants: Rebounderz of Edison, Rebounderz Edison, NJ, Rebounderz Franchise and Development, Inc., and Yeglinski Enterprises, Inc. Plaintiffs allege that on December 14, 2014, Mr. Vogt suffered serious injury while participating in a recreational trampoline activity at a Rebounderz franchise located at 76 Carter Drive, Edison, New Jersey (the "Franchise Location"). The Franchise Location is allegedly owned and operated by Defendant Yeglinsky Enterprises (the "Franchisee"). The Complaint contains three causes of action against all defendants as follows:

First Count: Negligence
Second Count: Loss of Consortium
Third Count: Negligent Infliction of Emotional Distress

The Complaint was filed on November 14, 2016, and on December 1, 2016, Plaintiffs served the Complaint on Kenneth Yeglinski, who allegedly accepted service on behalf of all defendants, including Rebounderz.

In or around February of 2017, the law firm of Schwab, Haddix & Millman ("Schwab") filed an Answer to the Complaint, identifying himself as the attorney for "Defendant(s), Yeglinski Enterprises, Inc. d/b/a Rebounderz, i/p/a [improperly pled as] Rebounderz of Edison, Rebounderz Edison, Rebounderz Edison, NJ, Rebounderz Franchise". We understand that no other law firm has entered an appearance on behalf of any defendants, including Rebounderz.

We also understand that on or about November 27, 2017, Schwab filed a Notice of Motion to Amend its answer or, in the alternative, to withdraw as counsel for all defendants other than the Franchisee (the "Motion to Amend"). On or about December 4, 2017, Plaintiffs' counsel filed an opposition to the Motion to Amend. At the same time, Plaintiffs' counsel sent a copy of those motion papers, and the Complaint and Answer filed in the Underlying Action, via facsimile to Rebounderz at its corporate headquarters in Florida.

On or about December 6, 2017, Penn-America received a copy of the papers that you received from Plaintiffs' counsel. This was the first notice to Penn-America of either Mr. Vogt's accident or the Underlying Action.

On January 18, 2017, you informed us that Rebounderz learned of Mr. Vogt's accident when it occurred in 2014. We further understand that on or about May 22, 2017, Mr. Yeglinski contacted Rebounderz regarding responses to interrogatory requests in the Underlying Action.

## THE PENN-AMERICA POLICY

Penn-America Insurance Company, a member of Global Indemnity Group, issued Commercial Lines Common Policy No. PAC7053629 to Rebounderz for the policy period of March 12, 2014 to March 12, 2015 (the "Policy"). The Policy contains liability limits of $1,000,000 per occurrence with a $2,000,000 aggregate limit.

18000042-1266/2018

Dexter Ryan
January 23, 2018
Page 3

For your convenience, we discuss in this letter the portions of the Policy which we feel are particularly relevant to this loss. However, it should be noted that the portions of the Policy referenced in this correspondence are not meant to be representative of all portions of the Policy that may apply to this loss. Failure to cite a particular agreement, provision, exclusion, condition, or any other part of the Policy and/or its endorsements is not to be considered a waiver of any rights of Penn-America to invoke any portion of the Policy or its endorsements that may be, have been, or might become relevant to this loss, as all rights of Penn-America are expressly reserved in regard to this loss. It is suggested that you familiarize yourself with your insurance policy in its entirety.

## PENN-AMERICA'S OFFER OF A DEFENSE UNDER A RESERVATION OF RIGHTS

Given the information provided to date, Penn-America will agree to defend Rebounderz in the Underlying Action subject to a full and complete reservation of rights, which includes the right to withdraw from the defense, and to deny any indemnity or coverage to Rebounderz for the Underlying Action. Below, we explain the specific issues with regard to the Underlying Action that raise coverage questions and upon which Penn-America bases its reservation of rights.

We explain Penn-America's position with regard to the applicable liability insuring agreements contained in the Policy. The insuring agreement for Coverage A – Bodily Injury and Property Damage Liability is in form CG 00 01 (ed. 04/13), and states in relevant part:

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

        (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

Dexter Ryan
January 23, 2018
Page 4

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section **II.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

<div align="center">* * * * *</div>

The Policy also contains Coverage B – Personal and Advertising Injury Liability.  The applicable insuring agreement is in form CG 00 01 (ed. 04/13), and states in relevant part:

<div align="center">

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

</div>

**1.**  **Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . .

  **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

<div align="center">* * * * *</div>

The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  The Policy defines "property damage" to mean "a. Physical injury to tangible property . . . or b. loss of use of tangible property that is not physically injured."  The Policy defines "personal and advertising injury" to mean "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

Dexter Ryan
January 23, 2018
Page 5

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement"

The Underlying Action does not allege "property damage" or "personal and advertising injury" as those terms are defined by the Policy. However, the Underlying Action appears to allege damages because of "bodily injury" as that term is defined in the Policy, which is why Penn-America has agreed to offer a defense to Rebounderz under an express reservation of rights as explained herein.

Penn-America must specifically reserve its rights to deny coverage for the Underlying Action because Rebounderz failed to provide timely notice of either Mr. Vogt's accident or the Underlying Action as required by the Policy's conditions in Section IV, which states in relevant part:

    **2.**    **Duties in the Event of an Occurrence, Offense, Claim or Suit**

        **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

            **(1)**    How, when and where the "occurrence" or offense took place;

            **(2)**    The names and addresses of any injured persons and any witnesses; and

            **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

        **b.**    If a claim is made or "suit" is brought against any insured, you must:

            **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

            **(2)**    Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit as soon as practicable."

        **c.**    You and any other involved "insured" must:

            **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

* * * * *

Dexter Ryan
January 23, 2018
Page 6

Although you have acknowledged that Rebounderz was aware of Mr. Vogt's accident at or near the time it occurred in December 2014, you did not provide notice to Penn-America until December 2017, three years later.  Further, although it also appears that Rebounderz was aware of the Underlying Action on or about May 23, 2017, you did not provide notice to Penn-America until December 2017, approximately six months later.  Penn-America believes this delay in affording notice of both Mr. Vogt's accident and the Underlying Action may have prejudiced Penn-America's rights under the Policy.  Therefore, Penn-America must reserve its rights to withdraw that defense and deny coverage on the basis that Rebounderz did not provide notice "as soon as practicable" in accordance with the Policy conditions.

Penn-America also must reserve its rights as to the existence and availability of "other valid and collectible insurance" applicable to this matter.  In this regard, Penn-America reserves all rights it may have to seek contribution, or any other relief that is appropriate, pursuant to the "other insurance" clause contained within the Policy, and any other policy that is applicable to this matter, including any policy issued to the Franchisee.  If you have any other coverage that may potentially apply to this loss, we suggest that you notify those carriers so that they may review the matter accordingly.

Based on the above, our offer to provide a defense in this matter on Rebounderz' behalf must be with the express understanding that Penn-America reserves all of its rights, including, but not limited to, its right to deny coverage, to deny indemnity for the claims asserted against Rebounderz, or to terminate and withdraw its defense at any time in the event it determines that there is no coverage for the allegations in the Underlying Action.  <u>Rebounderz has the right to accept or reject our offer to defend it in the Underlying Action under a reservation of Penn-America's rights as expressed above.</u>

If you accept Penn-America's offer to provide a defense, as indicated, it is subject to the reservation of all rights with respect to the parties' duties and obligations under the Policy.  If we do not hear from you within 10 days of the date of this letter, it will be construed as an acceptance of the terms of this offer, and we will assign Robert Ballou, Esquire of the firm Garvey Ballou to defend Rebounderz.  Of course, if you reject Penn-America's offer to defend you, you will be responsible for all defense costs.  Whether Rebounderz accepts this offer or not, Penn-America will not indemnify Rebounderz for any claims that are not covered by the Policy, including claims that are not covered for the reasons outlined in this letter.  Therefore, even if you accept the terms of our offer to defend, you may still wish to retain personal counsel, at your expense, to work with defense counsel in order to protect any uninsured exposure you may have.  Should you accept our defense, you are not required to retain your own attorney, however, we bring this matter to your attention as it merits your serious consideration.  The decision as to whether you should employ a personal attorney rests entirely with you.

Penn-America's coverage position is based upon the information provided to it to date.  In addition to the reasons identified above, there may be additional grounds upon which Penn-America may not owe coverage.  If you have or receive additional information that you believe may affect our coverage determination with respect to the Underlying Action, please forward that information to us as soon as possible.  We will be happy to evaluate that material.

Dexter Ryan
January 23, 2018
Page 7

Please be further advised that neither this letter nor any investigation of this matter undertaken by Penn-America constitutes a waiver or other compromise of any rights or defenses of Penn-America, whether or not stated herein. Penn-America continues to reserve all of its rights and defenses under any insurance policy issued and at law.

Should you have any questions concerning this matter, do not hesitate to contact the undersigned.

Very Truly Yours,
PENN-AMERICA INSURANCE COMPANY

Cheryl A. Mawby
Senior Claims Examiner II

cc:    All Risks Ltd.
       610 Crescent Executive Court
       Suite 312
       Lake Mary, FL 32746

       Robert Ballou, Esquire
       Garvey Ballou
       204 Court House Lane
       P. O. Box 5070
       Toms River, NJ  08754-5070

18000042-1266/2018